1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   KWAME LUANGISA,                    )
                                       )
8                    Plaintiff,        )        2:11-cv-00951-RCJ-CWH
                                       )
9    vs.                               )        ORDER
                                       )
10   INTERFACE OPERATIONS, *et al.*,   )
                                       )
11                   Defendants.       )
                                       )

12
13       This matter came before the Court for a hearing Plaintiff's Emergency Motion to Compel and
14   for Sanctions; for Protective Order; and for an Order Directing Counsel to Cease Obstructionist
15   Tactics During Oral Depositions (#33), filed October 6, 2011; Defendant Interface Operations,
16   LLC's Opposition to Plaintiff's Emergency Motion to Compel and for Sanctions and for a Protective
17   Order; and Defendant's Countermotion for Protective Order and for Sanctions (#41)[1], filed October
18   12, 2011; and Plaintiff's Reply and Opposition to Defendant's Countermotion (#44), filed October
19   14, 2011.

## **BACKGROUND**

20       Chief Judge Jones, the assigned district judge in this matter, has accurately described the
21   tenor of this case as "acrimonious." *See* Order (#37) at 3:12-13. The undersigned anticipated that
22   the acrimony would dissipate as the parties commenced discovery and began to explore the facts
23   of the case. Unfortunately, the acrimony has not dissipated but has steadily increased.

24   **1. Factual Background**

25       This Fair Labor Standards Act ("FLSA") case arises out of an alleged failure to pay overtime

26

27       [1] At the time this response was filed, Defendant Sheldon G. Adelson had been dismissed from the
28   case. *See* Order (#37). Subsequently, Plaintiff filed an amended complaint curing the defects noted by the
     court in its order dismissing Defendant Adelson from the case. *See* Amend. Compl. (#47). On November
     3, 2011, Defendants Interface Operations, LLC, Adfam LLC and Sheldon G. Adelson filed their answer to
     the amended complaint. *See* Answer (#59).

wages to Plaintiff Kwame Luangisa ("Plaintiff"), Defendant Sheldon G. Adelson's ("Adelson") personal driver.  It is alleged that Defendant Adfam, LLC, predecessor-in-interest to Defendant Interface Operations LLC, hired Plaintiff to be the personal driver for Adelson.  *See* Amend. Compl. (#47) at ¶¶ 7, 8.  Plaintiff moved from New York City to Las Vegas for the position.  *Id.* at ¶ 8.  Plaintiff alleges that he acted at the personal direction of Adelson "at all times during his employment" and that he regularly worked seven days a week for between twelve  and eighteen hours a day. *Id.* at ¶¶ 9, 12.  Plaintiff alleges that he complained about the hours of his employment to supervisory employees at Defendants Adfam and Interface but was told that "he was not entitled to any overtime pay because he was a 'salary' employee." *Id.* at ¶ 11.  He seeks "back pay in the form of one and half times the effective hourly rate; liquidated damages, attorneys fees and costs as provided by law." *Id.* at 5:13-14.

**2.  Procedural Background**

The original complaint in this matter was filed on June 10, 2011. (#1).  Defendants Adfam and Interface filed an answer on July 11, 2011. (#6).  On that same day, July 11, 2011, Adelson filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (#7).  On October 7, 2011, Adelson's motion to dismiss was granted with leave to amend. *See* Order (#37).  Plaintiff filed his amended complaint on October 17, 2011. (#47).  Defendants Interface, Adfam and Adelson filed a joint answer on November 3, 2011. (#59).

**3.  Prior Discovery Disputes**

    **A.  The Discovery Plan**

After the briefing on Adelson's motion to dismiss (#7) was complete, Plaintiff filed a proposed discovery plan and scheduling order. (#12). The Court denied the proposed discovery plan and ordered the parties to "make a good faith effort to agree upon an appropriate confidentiality order and a stipulated discovery plan and scheduling order."[2]  *See* Min. Order (#14).  Subsequently, the parties submitted a joint discovery plan and scheduling order that outlined a disagreement over the scope of a contemplated protective order and whether discovery should commence before the

---

[2]  The order was issued by Judge Leavitt; the assigned magistrate judge prior to reassignment to the undersigned.

1   contemplated protective order was entered.  The Court approved the deadlines set forth in the

2   proposed discovery plan and instructed Defendants to file their proposed protective order.

3   Discovery was to commence upon entry of the order.  *See* Order (#16).

4   **B. Non-Party Betty Yurcich's Emergency Motion for Protective Order (#18)**

5   Shortly after the discovery plan was approved, defense counsel, on behalf of non-party Betty

6   Yurcich filed an emergency motion for protective order requesting that the court (1) vacate her

7   deposition noticed for September 20, 2011, and (2) order counsel for the parties to meet and confer

8   regarding scheduling depositions on mutually agreeable dates.  *See* Mot. (#18) at 2:6-9.  According

9   to defense counsel, Plaintiff's counsel was unwilling to accommodate the witness's schedule and

10  "unreasonably" proposed rescheduling the deposition to a date prior to the noticed deposition,

11  including a Saturday or Sunday.  *Id*. at 2:25-27.

12  Plaintiff's counsel denied the allegations and countered that Defendants were attempting "to

13  stall and otherwise obstruct the orderly and expeditious progression of discovery in this case."  *See*

14  Pl.'s Response (#21) at 2:9-11.  Ultimately, the request that the deposition be vacated was granted

15  because  both the witness and her counsel were unavailable on the day it was scheduled.[3]

16  **C. Defendants' Emergency Motion for Protective Order Concerning the Location of**

17  **Sheldon G. Adelson's Deposition (#24)**

18  On September 19, 2011, Defendants filed their second emergency motion in less than two

19  weeks.  *See* Defs' Mot. (#24).  Although conceding that he did not object to the taking of Adelson's

20  deposition, defense counsel requested that it be taken at Adelson's office or, alternatively, at the

21  courthouse due to security concerns.  The Court denied the motion because Adelson had been

22  deposed in Plaintiff's counsel's office on two prior occasions without incident and Plaintiff's counsel

23  agreed that security personnel could accompany Adelson.

24  **D. Defendants' Motion For Order To Show Cause Why Plaintiff's Counsel Should Not**

25  **Be Held In Contempt Of Court For Violation of Court Order (#29)**

26

27  _____

        [3]  The Court has learned that defense counsel did not attend the deposition, leaving that assignment
28  to his co-counsel in the case.  The Court's ruling may very well have been different if it had been made aware
    that co-counsel could defend the deposition.

- 3 -

On the same day Defendants' emergency motion (#24) was filed, an article appeared in a local newspaper wherein a spokesman for the Las Vegas Sands is quoted as saying that, during a prior deposition, "Mr. Campbell [Plaintiff's lead counsel] lost his temper . . . and attempted to throw books at Mr. Adelson." *See* Ex. 5 attached to Pl.'s Resp. (#26).[4]  Concerned by the allegations, Plaintiff's counsel attached to his response a redacted video copy of the prior deposition. *See* Ex. 6 attached to Pl.'s Resp. (#26).[5]  Thereafter, Defendants filed a motion requesting that this court enter an order to show cause against Plaintiff's counsel for allegedly disclosing copies of the prior deposition to a local television outlet in violation of a state court order entered in a separate case. *See* Defs' Mot. (#29).  Chief Judge Jones denied Defendants' motion (#29) stating that "[m]ovants must petition the state court for a determination of whether Plaintiff's counsel has flouted that court's authority." *See* Order (#46).

**E.   The Parties dispute regarding the presence of Adelson's videographer during the October 6, 2011, deposition of Sheldon G. Adelson**

At approximately 9:00 a.m., when the deposition was scheduled to begin, the parties contacted chambers requesting a conference in order to resolve a dispute.  Apparently, defense counsel had brought his own videographer to the deposition for the express purpose of videotaping Plaintiff's counsel during the deposition.  Plaintiff's counsel objected.  After hearing the parties arguments, the court ordered that the additional videographer be excluded from the deposition.

**4.  Deposition of Sheldon G. Adelson**

**A.  Plaintiff's Emergency Motion to Compel and for Sanctions; for Protective Order; and for an Order Directing Counsel to Cease Obstructionist Tactics During Oral Depositions (#33)**

After addressing the videographer request, the Court did not hear from the parties for the remainder of the morning or early afternoon.  However, at approximately 4:00 p.m that day, Plaintiff

---

[4] http://www.vegasinc.com/news/2011/sep/19/safety-sands-ceo-sheldon-adelson-issue-las-vegas-d/

[5]  The video exhibit directly contradicts the claims made by the Las Vegas Sands spokesman and clearly supports the facts as posited by Plaintiff's counsel in his response brief (*see* Pl.'s Resp. (#26) at 5:10-23).

filed an emergency motion to compel and for sanctions requesting the following: (1) an order directing Adelson and his counsel to refrain from obstructing a fair examination; (2) the imposition of monetary sanctions against Adelson and his counsel pursuant to Fed. R. Civ. P. 30(d)(2) and Fed. R. Civ. P. 37(a)(5); (3) that Adelson be compelled to reappear for the resumption of his deposition; and (4) a protective order vacating Plaintiff's deposition until after Adelson's deposition is resumed and completed.  *See* Pl.'s Mot. (#33) at 6:2-11.

Plaintiff argues that during his deposition "Adelson and his counsel engaged in a continuing series of acts which were clearly designed to impede a fair examination of the deponent."  *Id*. at 4:10-11.  The behavior "forced" Plaintiff's counsel "to terminate the deposition after less than 10 minutes of actual testimony."  *Id*. at 2:4-5.  Plaintiff further claims that Adelson's counsel (1) gave "serial directives" that Adelson not answer questions that counsel deemed irrelevant; (2) "engaged in persistent filibustering" to impede the deposition; (3) made "unnecessary and meritless speaking objections to almost every question posed"; and (4) repeatedly interrogated Plaintiff's counsel to explain the rationale for his questions.   Plaintiff noted that Adelson refused to answer questions based on his own belief that the questions were not relevant.  According to Plaintiff, the conduct violated both the spirit and letter of the rules and presents "a textbook example of a case in which sanctions are warranted under [Fed. R. Civ. P.] 30(d)(2)."  *Id*. at 5:11-13.

## B.   Defendant's Response (#41)

On October 12, 2011, Defendant Interface Operations LLC filed a response to Plaintiff's emergency motion.  *See* Def.'s Resp. (#41).  The response included a countermotion for protective order and for sanctions.  Defendant denies the allegations set forth by Plaintiff and argues that Adelson's deposition was "unilaterally terminated" so that Plaintiff's counsel could race to the courthouse and file a pre-drafted motion and publicly disclose the videotaped deposition "in direct violation of the parties' signed stipulated protective order."  *Id*. at 2:6-7.  Defendant claims the termination of the deposition was "clearly a pretext to manufacture a discovery dispute" so that Plaintiff's counsel could continue his "crusade to harass and embarrass Mr. Adelson" and pursue his own "personal distaste for and vendetta against Mr. Adelson."  *Id*. at 2:8-10, 16-17.  Defendant claims Plaintiff's emergency motion is "nothing more than a smoke screen to deflect from Mr.

Campbell's [Plaintiff's counsel] real goal: manufacture a discovery dispute with Mr. Adelson on videotape and run to court to file it in hopes of watching it on the local news that evening." *Id*. at 8:1-3.

### C.   Defendant's Countermotion for a Protective Order and Sanctions

Defendant also requests a protective order pursuant Rule 26(c) claiming it is necessary because Plaintiff's counsel fails to understand the proper scope of discovery under Rule 26 and is "playing fast and loose with the discovery rules." *Id*. at 9:9.  Defendant asks the Court to limit discovery to questions about hours worked, duties performed, and wages paid during the period of June 8, 2008 through June 10, 2011.  Defendant accuses Plaintiff's counsel of, among other things, race baiting during the prior deposition of Zohar Lahav, harassing Ms. Yurcich in her deposition, and pursuing lines of questioning wholly irrelevant to the overtime claims in this case.  *Id*. at 11:16 - 12:9.[6]  Defendant asserts that Plaintiff's counsel asked irrelevant and duplicative questions during the Adelson deposition to serve his ulterior motive of manufacturing a discovery dispute and dragging Adelson back to court.

Defendant also requests that the Court preclude the renewed deposition of Adelson based on the theory that he is an "apex" witness.  Defendant claims that Adelson has no unique, firsthand knowledge of the facts in this case and that there are other, less intrusive means of discovery. Defendant asserts that Adelson was not Plaintiff's direct supervisor and was not responsible for maintaining time records.  At a minimum, Defendant argues that Plaintiff should be required to depose his "direct supervisor and other relevant witnesses" prior to deposing Adelson.  *Id*. at 18:9- 10.

Finally, Defendant requests that Plaintiff's counsel be sanctioned pursuant to Fed. R. Civ. P. 37(b)(2) for attaching the DVD of the deposition to its motion in violation of the parties stipulated protective order (#30) and for improperly terminating the deposition "once he believed that he had created a false discovery dispute." *Id*. at 19:20-22.  Defendant contends that Plaintiff's counsel did not conducted himself as "an advocate who is genuinely interested in obtaining discovery" but used

---

[6] Mr. Lahav was not deposed in this case but, rather, in the ongoing case of *Burlingame v. Las Vegas Sands Corporation*, 2:11-cv-00960 PMP-RJJ.

1  the deposition process to "inquire into every silly little thought that pops into his head." *See* Def.'s
2  Resp. (#41) at pp. 7:16-18, 19:25-26.

3      **D.   Plaintiff's Reply and Opposition (#44)**

4      Plaintiff's reply declares the response (#41) "delusional" and "better suited to be addressed
5  by a psychiatrist" than by a court.  He argues that defense counsel has "leveled a seemingly endless
6  list of personal invectives against Mr. Campbell [Plaintiff's counsel] in the hopes that the Court will
7  be distracted" from counsel's own "indefensible conduct."  *See* Reply (#44) at 2:3-6, 27-28.
8  Plaintiff claims that from the outset of the deposition, defense counsel took an aggressive and
9  overbearing demeanor signaling "a strategy to disrupt the deposition by whatever means necessary."
10 *Id*. at 3:16-18.

11     Plaintiff also opposes the request to temporally limit discovery arguing that discovery into
12 prior conduct is relevant to the question of whether the alleged violations of FLSA was willful,
13 which triggers more significant remedies.   Plaintiff also argues that entering a standing order
14 requiring his counsel to explain the relevance of each witness he seeks to depose violates Fed. R.
15 Civ. P. 26(b)(3) (attorney work-product).  Plaintiff claims that the "apex" doctrine is not applicable
16 to Adelson because he has critical and unique knowledge of the relevant facts.  Finally, Plaintiff's
17 counsel opposes the request for sanctions arguing that nothing in the deposition is confidential and
18 that he did not conduct himself in bad faith during a deposition.

19     **F.  October 19, 2011 Hearing**

20     At the hearing, the Court heard argument from Plaintiff's counsel first.  Noting that in the
21 first ten minutes of the deposition Adelson refused to respond on five separate occasions, the Court
22 asked Plaintiff's counsel why he did not contact the Court before filing the motion.  Counsel
23 indicated that it was clear from the beginning of the deposition that Adelson's counsel was not going
24 to aid in controlling the witness and, indeed, was contributing to the frustration of a fair examination.
25 Regarding the applicability of the "apex" doctrine, Plaintiff's counsel argued that the employment
26 records which might address Plaintiff's work schedules and time cards produced by Defendants were
27 "pathetic," and the evidence regarding these issues is not otherwise available, necessitating
28 Adelson's deposition.  Plaintiff's counsel cites Judge Jones' language in the order of dismissal (#37),

1   Plaintiff's status as Adelson's personal, and only, driver, and the unavailability of evidence on these

2   issues from any other source, to support his argument that the "apex" doctrine does not apply to

3   Adelson in this circumstance.[7]

4        Next, the Court heard argument from defense counsel.  He discussed Plaintiff's counsel's

5   prior litigation against Adelson and the "readily apparent ... serious animosity built-up as a result of

6   that litigation."  He claimed that Plaintiff's counsel had submitted documents from other cases in

7   the *Burlingame* (see *supra* at n. 6) case and asked inappropriate questions during a deposition in the

8   *Burlingame* case.  In response to the  Court's question as to why the deposition or other conduct in

9   the *Burlingame* case is relevant to this matter, counsel claimed that Plaintiff's counsel was using the

10  depositions in this case to circumvent the partial stay entered in the *Burlingame* case.  Counsel also

11  detailed many questions he felt were inappropriate during the deposition of Ms. Betty Yurcich.

12  Counsel argued that opposing counsel should have contacted the undersigned rather than file the

13  emergency motion, that the relevance objections were appropriate, and that opposing counsel was

14  obligated to explain the relevance of the questions to which he objected.

15       Defense counsel also reiterated his request that the Court enter a protective order precluding

16  the resumption of Adelson's deposition.  Counsel asked that the protective order (1) require Court

17  approval for <u>any</u> future deposition in this case; (2) preclude any further videotaped depositions; and

18  (3) temporally limit discovery to the period of June 2008 through June 2011 or, alternatively, from

19  Plaintiff's date of hire (July 2006) through the present.  Counsel agreed with the court that the DVD

20  of Adelson's deposition filed with the Plaintiff's emergency motion (#33) did not contain any

21  confidential information.   He also explained that he did not make the "apex" objection before

22  Adelson's deposition because he wanted to avoid a media "ruckus" and knew that Adelson had no

23  relevant information.  Claiming his optimism got the best of him, counsel argues that application of

24  the "apex" doctrine is now appropriate.

25  ///

26

27       [7]  According to Judge Jones, "[i]f AdFam and Interface were simply companies created to service
    the Adelson family, as is likely the case, and if Plaintiff's duties consisted primarily of driving Mr. Adelson
28  at his direction, as he has alleged, then it is possible Mr. Adelson exercised significant or even total control
    over Plaintiff's driving duties."  *See* Order (#37) at 3:23-4:2.

**DISCUSSION**

Before addressing the issues presented, the Court notes that it has set forth an exhaustive review of prior discovery disputes in this matter and the parties' positions regarding the pending motions to add context to the harsh rhetoric contained in the motions currently under consideration. The process of distilling the issues presented in a motion is made more difficult when, as here, the entire record is clouded with pointless *ad hominem* attacks between counsel. During its review of the record, the Court has become firmly fixed in its belief that counsel for the parties need to recalibrate and shift their energy to move this case forward in a manner befitting of their respective professional reputations.

**1. Plaintiff's Emergency Motion to Compel (#33)**

**A. General Deposition Requirements**

Statistics show that fewer and fewer civil cases proceed all the way to trial. As a result, "[d]epositions are the factual battleground where the vast majority of litigation actually takes place." *Hall v. Clifton Precision*, 150 F.R.D. 525, 531 (E.D. Pa. 1993). As the author in *Hall* stated:

> The significance of depositions has grown geometrically over the years to the point where their pervasiveness now dwarfs both the time spent and the facts learned at the actual trial—assuming there is a trial, which there usually is not. The pretrial tail now wags the trial dog. Thus, it is particularly important that this discovery device not be abused. Counsel should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon them, as long as the deposition is conducted under the caption of this court and proceeding under the authority of the rules of this court, counsel are operating as officers of this court.

*Id*. Based on the wealth of caselaw addressing improper conduct during depositions, it is clear that striking a balance between being an officer of the court and the duty to zealously represent a client can prove elusive. Nevertheless, the two roles are not mutually exclusive and counsel must balance the two - especially during a deposition.

Examination and cross-examination of witnesses during depositions should proceed as it does at trial. *Cf. Damaj v. Farmers Insurance Co., Inc.*, 164 F.R.D. 559, 560 (N.D. Okla. 1995). "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." *See* Advisory Committee Comments to 1993 Amendments. "The setting for a deposition mimics trial, with one important difference: a court reporter is present,

1    testimony is taken under oath, counsel are present to zealously represent their clients, yet when the

2    inevitable occurs, a difference of opinion regarding the propriety of a question, there is no judge to

3    rule on the dispute." *Boyd v. University of Maryland Medical System*, 173 F.R.D. 143, 144 (D. Md.

4    1997); *see also* Fed. R. Civ. P. 30(c)(1).  When there is a difference of opinion regarding the

5    propriety of a question, counsel should rise above their roles as advocates and attempt to resolve the

6    differences without court intervention.  *Id.*

7            Ultimately, "[d]epositions are to be limited to what they were intended to be: question-and-

8    answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit." *Hall*,

9    150 F.R.D at 531.  "When a deposition becomes something other than that because of the strategic

10   interruptions, suggestions, statements, and arguments of counsel, ... it ceases to serve the purpose

11   of the Federal Rules of Civil Procedure: to find and fix the truth."[8]  *Id.*  There is perhaps no more

12   aggravating an action than an attorney or deponent engaging in abusive tactics during the course of

13   a deposition.  However, engaging in such tactics is "a dangerous, and potentially expensive,

14   endeavor."  *Boyd*, 173 F.R.D. at 144.

15   **B.  Merits of Plaintiff's Emergency Motion (#33)**

16           Adelson's October 6 deposition began with defense counsel's request that he be able to film

17   Plaintiff's counsel during the deposition.  The request was denied.  Once the deposition began,

18   virtually every question was met with multiple objections which the Court finds were argumentative,

19   suggestive, and largely unnecessary.

20           Federal Rule of Civil Procedure 30 is quite clear on what types of objections counsel may

21   make during a deposition, how counsel must state objections, and when counsel may instruct a

22   deponent not to answer.  Rule 30 provides in relevant part:

23           An objection at the time of the examination ... must be noted on the record, but
             the examination still proceeds; the testimony is taken subject to any objection.
24           An objection must be stated concisely in a nonargumentative and nonsuggestive
             manner.  A person may instruct a deponent not to answer <u>only</u> when necessary
25           to preserve a privilege, to enforce a limitation ordered by the court, or to present
             a motion under Rule 30(d)(3).

26

27           _____

     [8]   The author in *Hall* felt compelled to add a foonote to clarify that "fix" is to be understood as
28   "firmly stabilizing (such as photographic image), rather than bending or muting the record to make it more
     factually comfy–as in to "fix" a prize fight, or a jury."  *Hall*, F.R.D. 525 at n. 11.

Fed. R. Civ. P. 30(c)(2).  The Supreme Court commented on the problem of unduly prolonged, obstructive and unfair deposition tactics in the 1993 Amendments to Fed. R. Civ. P. 30(d).  The Committee Note for the proposed changes made the following observations:

> Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquoy, often suggesting how the deponent should respond ... [O]bjections ... should be limited to those that under Rule 32(d)(3) might be waived if not made at that time ... [O]ther objections can ... be raised for the first time at trial and therefore, should be kept at a minimum during a deposition.

*See* Advisory Committee Notes to 1993 Amendments.

Counsel for a deponent has a limited, though not unimportant, role to play during a deposition.  Objections during a deposition "must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2).  The witness's own counsel should not interpret questions, decide what to answer, or help the witness answer questions. *Hall*, 150 F.R.D. at 528.  "Speaking objections and coaching objections are simply not permitted in depositions in federal cases." *McDonough v. Kiniston*, 188 F.R.D. 22, 24 (D.N.H. 1998).  It is inappropriate for counsel to engage in extensive and unnecessary colloquoy, assert groundless objections, improperly object, or utilize any opportunity to interrupt and argue with opposing counsel during a deposition.  Deposition testimony should be that of the deponent, not a version edited or glossed by the deponent's lawyer through coaching or speaking objections.  *See e.g.*, *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla 1999).  Courts have characterized such conduct as "Rambo litigation tactics" designed to interfere with or prevent the elicitation of meaningful testimony and disrupt the orderly flow of a deposition.  *E.g.*, *In re Stratosphere*, 182 F.R.D. 614, 619 (D. Nev. 1998).  Although this style might project zealousness, it does not, as required by Fed. R. Civ. P. 1, promote the "just, speedy, and inexpensive determination."

It is customary for the deposing attorney to set forth deposition ground rules at the beginning of a deposition.  Although attorneys might articulate it differently, it is essentially boilerplate instruction.  It is customary during this process to pose questions to determine whether the witness is suffering from any medical condition or is on any medication that might affect the witness's cognitive abilities.  It is an innocuous question that, in the Court's view should rarely, if ever, elicit

objection.  Nevertheless, during Adelson's deposition the following exchange took place:

| | | |
|---|---|---|
| Plaintiff's Counsel: | Mr. Adelson, insofar as taking your depostion, you and I have, have I guess conducted three depositions together or so.  And in some of those depositions you were on medication that affected – |
| Defense Counsel: | Don, we're not going to – I'm going to object right now.  We are not going to talk about medical conditions or anything like that. |
| Plaintiff's Counsel: | Okay. |
| Defense Counsel: | So you can ask him if he's capable of understanding and responding to questions. |
| Plaintiff's Counsel: | Your objection is noted. |
| Defense Counsel: | Counsel, none of this dismissiveness, please.  Let me finish.  We're not going to get into medical conditions.  You can ask him if he can understand and respond to question today, but delving into this other stuff is not going to happen. |
| Plaintiff's Counsel: | Is, is there any reason why your deposition cannot proceed forward here today because you are suffering from any medical condition or the effects of any of the medications that have been prescribed for you for those medical conditions, including, but not limited to, those medications that you were taking during the last deposition? |
| Defense Counsel: | Mr. Campbell, we are not, we are not here to talk about the last deposition.  The question is very simple, Mr. Adelson.  Are you capable of responding to questions today? |
| Adelson: | Yes. |
| Plaintiff's Counsel: | All right.  You understand the questions being asked of you and your cognitive ability are not in any way affected? |
| Adelson: | That is correct. |

The problems with this exchange are twofold.  First, defense counsel did not state a legitimate ground for the objection.  He simply unilaterally declares that the witness will not answer the question posed.  This unilateral refusal to let the witness respond was inappropriate without a validly stated objection.  "A person may instruct a deponent not to answer <u>only</u> when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2) (emphasis added).  Second, even after Plaintiff's counsel rephrased the question, defense counsel interjected and refused to let the witness respond.  He then went further and rephrased the question in a manner which defense counsel thought was more acceptable to the deponent.  This is inappropriate.  *See Hall*, 150 F.R.D. at 528 (deponent's own

1    counsel should not interpret questions, decide what to answer, or help the witness answer questions).

2

3          Immediately following the prior exchange, Plaintiff's counsel began a series of questions

4    which appear to be foundational in nature.  The very first question led to a relevance objection- an

5    objection raised on several occasions during the deposition. The witness refused to answer several

6    times based on his determination that he did not deem the question relevant.   The exchanges

7    occurred as follows:

8    Plaintiff's Counsel:   Take me through the Interface Operations and tell me what it is.

9    Defense Counsel:        Objection. Not relevant nor reasonably calculated to lead to the discovery
                             of admissible evidence.  Counsel, Mr. Roskelly gave you a lot of latitude
10                           yesterday  to  ask  these  question  of  the  deponent  [referring  to  the
                             deposition of Ms. Betty Yurcich], which I understand you did.  He gave
11                           you that latitude in part so we wouldn't have to rehash all of yesterday's
                             questions today [referring to questions asked during Ms. Yurcich's
12                           deposition].  Do you intend to rehash all of yesterday's questions today?

13   Plaintiff's Counsel:   [to witness] Please answer the question.

14   Defense Counsel:        [to Plaintiff's Counsel] I'm asking you a question.

15   Plaintiff's Counsel:   I'm not responding to your question.

16   Defense Counsel:        Okay.  I'm giving –

17   Plaintiff's Counsel:   I'm not the deponent.

18   Defense Counsel:        So that we're clear –

19   Plaintiff's Counsel:   – your client is.

20   Defense Counsel:        So that we're clear, Counsel, I am giving you an opportunity, before I
                             have to file a motion, I'm giving you an opportunity to explain why it is
21                           you apparently intend to spend substantial time reasking questions that
                             were covered in detail yesterday [during the deposition of Ms. Yurcich].
22                           Do you want to take that opportunity to explain, yes or no?

23   Plaintiff's Counsel:   No.  I'm not explaining anything to you.

24   Adelson:               I respectfully decline to answer that question.

25   Plaintiff's Counsel:   And why is that?

26   Adelson:               It's irrelevant.

27   Plaintiff's Counsel:   Why do you believe it to be irrelevant?

28   Adelson:               This is a case about performance of overtime.

| | | |
|---|---|---|
| 1 | Plaintiff's Counsel: | Okay. |
| 2 | Adelson: | Any question that is not related to performance of overtime is not going to be answered by me. |
| 3 | | |
| 4 | | . . . |
| | Plaintiff's Counsel: | Mr. Adelson, tell me what AdFam is. |
| 5 | Defense Counsel: | Same, same objection.  Go ahead [instructing witness to answer]. |
| 6 | | |
| 7 | | . . . |
| | Plaintiff's Counsel: | And who are the employees of AdFam? |
| 8 | Adelson: | I don't know. |
| 9 | Plaintiff's Counsel: | Do you know any of them? |
| 10 | | |
| | Adelson: | Yes.  A couple of them. |
| 11 | Plaintiff's Counsel: | And who are the ones that you know? |
| 12 | Adelson: | Mr. Garfinkel, who is sitting here; Mr. Bloom; Mr. Pritchard.  And, frankly, I don't know the others. |
| 13 | | |
| 14 | Plaintiff's Counsel: | What does Mr. Garfinkel do for AdFam? |
| 15 | Adelson: | He is the general counsel for AdFam. |
| 16 | Plaintiff's Counsel: | And how long has he been general counsel for AdFam |
| 17 | Defense Counsel: | Objection. Not relevant nor reasonably calculated to lead. Counsel, what does how long Mr. Garfinkel has been general counsel of AdFam have to do with whether or not your client worked overtime and whether or not he is entitled to it?  Counsel, the question is for you, so you can look at me. |
| 18 | | |
| 19 | | |
| 20 | Plaintiff's Counsel: | [to witness] Please answer the question. |
| 21 | Defense Counsel: | Wait a minute.  Counsel, I'm asking you. |
| 22 | Plaintiff's Counsel: | I'm not responding to the question. |
| 23 | Defense Counsel: | Again, I'm giving you an opportunity because you have an ethical obligation and you have a legal obligation to ask questions that are relevant or reasonably calculated to lead to the discovery of admissible evidence.  And I'm giving you, Mr. Campbell, an opportunity to explain on the record why it is that question fits within those parameters.  And if you choose not to explain it in a good faith effort now, I'm going to interpret that and I'm going to argue that all it is, is you trying to create a discovery dispute.  Is there any reason your question fits within those parameters? |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | Plaintiff's Counsel: | Are you going to answer the question, Mr. Adelson? |

| | | |
|---|---|---|
| Defense Counsel: | Before he answer the question, I'm asking you, are you going to answer my question? |
| Plaintiff's Counsel: | I'm not responding. |
| Defense Counsel: | Okay. |
| Adelson: | I respectfully decline to answer the question on the basis of irrelevance. |

. . .

| | |
|---|---|
| Plaintiff's Counsel: | You mentioned in your testimony that besides housekeeping services, such as maid, cooks, individuals who performed maintenance. |
| Adelson: | I think my chef would be insulted if you called him a cook. |
| Plaintiff's Counsel: | Okay. Chefs. Are there any other domestic individuals that are employed by AdFam – |
| Defense Counsel: | Objection. |
| Plaintiff's Counsel: | – irrespective of whether you know their names or not? |
| Defense Counsel: | Objection. Asked and answered. And it's not relevant nor reasonably calculated to lead. |
| Plaintiff's Counsel: | Are you going to – are you refusing to answer that question? |
| Adelson: | I'm declining, respectfully declining to answer that question. |

. . .

| | |
|---|---|
| Plaintiff's Counsel: | All right. What previous Interface companies were there? |
| Adelson: | It's irrelevant to the claim. |
| Defense Counsel: | Objection. Not relevant nor – |
| Adelson: | What's it got to do with his overtime? |
| Plaintiff's Counsel: | All right. Are you refusing to answer that question as well. |
| Adelson: | I respectfully decline. |
| Plaintiff's Counsel: | All right. |
| Defense Counsel: | Counsel, would you like to explain why that's even remotely germane, whether it's relevant or reasonably calculated to lead. Would you like to explain that? |
| Plaintiff's Counsel: | I'm not going to respond to that. |

After the fifth relevance objection and the fifth refusal by the witness to answer a question (one at the express instruction of counsel) in the first few minutes of the deposition, Plaintiff's

1    counsel terminated the deposition and indicated that he would seek sanctions.

2          The deposition conduct outlined above falls well short of what the rules require of a deponent

3    and deponent's counsel during a deposition. It is well understood that, absent compelling

4    circumstances not present here, it is usually not necessary to object during a deposition on relevance

5    grounds.  8A Wright, Miller & Marcus, *Fed. Prac. & Proc.* § 2113 (3d ed.) ("Objections to the

6    competency of a witness or to the competency, relevance, or materiality of testimony are not waived,

7    and may be presented at the trial even though they were not noted at the deposition, unless the

8    ground of the objection is one that might have been obviated or removed if presented at the time the

9    deposition was being taken."); *see also Quantachrome*, 189 F.R.D. at 700 ("It is arguable whether

10   objections based on relevancy should even be made during the deposition.").[9]  Even in the face of

11   irrelevant questions, the proper procedure is to answer the questions, noting them for resolution at

12   pretrial or trial, unless the questions are so pervasive that a motion under Rule 30(d)(3) is

13   appropriate.  *In re Stratosphere Corp.*, 182 F.R.D. at 618-19 (citations omitted).

14         Defense counsel, a seasoned and well-respected attorney, is well aware of what objections

15   are appropriate during a deposition and how to make them.  Yet he repeatedly objected throughout

16   the deposition on relevance grounds, and demanded on multiple occasions that Plaintiff's counsel

17   explain, on the record, the relevance of the proffered question.  It is inappropriate to interrogate

18   opposing counsel during the course of a deposition.  Moreover, objections that result in an

19   incomplete answer or in the witness's adoption of counsel's statement are suggestive.  *See Plaisted*

20   *v. Geisinger Medical Center*, 210 F.R.D. 527, 534 (M.D. Pa. 2002).  Adelson refused on four

21   separate occasions to answer questions, incorporating the exact objection stated by his counsel. Rule

22   30 requires that objections be stated in a nonsuggestive manner. *See* Fed. R. Civ. P. 30(c)(2).  That

23   did not happen here.[10]

24   ───────────────

25         [9] Questions to which timely objections should be made during a deposition include questions which
     are leading or suggestive; ambiguous or uncertain; compound; assume facts not in evidence; call for
26   speculation or conjecture; call for narration; or argumentative. *See* Schwarzer, Tashima & Wagstaffe,
     *Federal Civil Procedure Before Trial*, § 11:1551-11:1556.

27         [10] In the Court's view, the deponent's personal understanding, or lack thereof, of the operations of
28   Interface and Adfam, both named defendants in the case that provide services directly for Mr. Adelson, and
     the employees of those organizations is relevant.  It is reasonably calculated to lead to the discovery of

1   Rule 30 does provide a deponent with a remedy in the case of persistent, pervasive irrelevant

2   questioning.  The deponent may suspend the deposition and contact the court or terminate the

3   deposition and file a motion.  However, neither the wholesale refusal of a witness to answer a

4   question nor an instruction from counsel not to answer a question on relevance grounds is

5   appropriate "unless and until the pervasive or other nature of the questioning makes it obvious that

6   it is necessary to stop the deposition and seek relief under Rule 30(d)(3) for being conducted in a

7   manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent." *In re Stratosphere*

8   *Corp.*, 182 F.R.D. at 619; *see also Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.

9   1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance.").

10  Here, rather than seek relief under Rule 30, Adelson continually refused to answer questions.

11  Additionally, defense counsel made no effort to advise his client of his obligation to answer

12  the questions which were asked.  It is not enough for an attorney to refrain from instructing a client

13  not to answer.  In fulfilling his or her duties as an officer of the court an attorney must take some

14  affirmative step to ensure the deponent complies with deposition rules.  *See cf.*, *GMAC Bank v.*

15  *HTFC Corp.*, 252 F.R.D. 253, 258 (E.D. Pa. 2008) (the failure of an attorney to take remedial steps

16  to curb client misconduct may be considered the functional equivalent of advising the misconduct).

17  The failure of an attorney to curb client misconduct during a deposition can have the effect, as it did

18  here, of empowering continued misconduct.  *Id*. (Silence in the face of client misconduct during a

19  deposition equates to an endorsement and ratification of that misconduct).

20  There are limited grounds upon which a deponent may refuse to answer a question during

21  a deposition.  *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer <u>only</u>

22  when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a

23  motion under Rule 30(d)(3).").  There were no objections made during the deposition on these

24  limited grounds.  Consequently, defense counsel should have instructed Adelson to answer the

25  questions subject to the objections or, alternatively, should have contacted the undersigned or filed

26

27

28  admissible evidence regarding this FLSA dispute.

1   a motion under Rule 30(d)(3).[11]

2        The Court disagrees with defense counsel's argument that Rule 30 requires Plaintiff's

3   counsel to call the undersigned or move on to other questions and file a motion to compel after the

4   deposition if there is an objection and refusal to answer.  It is incorrect to suggest that contacting the

5   court or filing a motion to compel is a condition precedent to terminating a deposition and seeking

6   relief under Rule 30.  Rule 30 provides for the termination, and thus an end to the objectionable

7   conduct, in the event a deposition is "being conducted in bad faith or in a manner that unreasonably

8   annoys, embarrasses, or oppresses a deponent."  *See* Fed. R. Civ. P. 30(d)(3).  The relief outlined in

9   Rule 30(d) is available to both a deponent and deposing party.  A deponent may not unilaterally

10  refuse to answer questions at a deposition and then require a deposing party to obtain a court order

11  directing the deponent to answer.  *E.g. Fondren v. Republic American Life Ins., Co.*, 190 F.R.D. 597,

12  600 (N.D. Okla. 1999).

13       Based on the foregoing, the Court finds that Plaintiff's decision to terminate the deposition

14  and file this motion was appropriate.  The Court further finds that Adelson's refusal to answer

15  questions based upon his counsel's continuous suggestive, argumentative, and unnecessary

16  objections improperly impeded and frustrated fair examination of Adelson during the deposition.

17  **2.  Defendant's Countermotion for Protective Order (#41)**

18       Having addressed the deposition conduct, the Court turns to Defendant Interface Operations

19  LLC's  countermotion for protective order wherein it requests an order (1) precluding Adelson's

20  deposition because he is an "apex" witness; (2) requiring Court approval prior to any future

21  deposition in this case; (3) precluding any further videotaped depositions; and (4) temporally limiting

22  discovery to the period of June 2008 through June 2011 or, alternatively, from Plaintiff's date of hire

23  (July 2006) through the present.

24        Pursuant to Fed. R. Civ. P. 26(c), "[t]he court may, for good cause, issue an order to protect

25  a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  A

26  court has "broad discretion ... to decide when a protective order is appropriate and what degree of

27

28        [11]  To be sure, the record does show that Adelson was polite and firm in his refusal.  But even a polite and firm refusal is inappropriate if not legally justified.

1   protection is required." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citation

2   omitted).   The party seeking the protective order bears the burden of demonstrating "specific

3   prejudice or harm will result if no protective order is granted." *Id*. at 1210-11. "Broad allegations

4   of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c)

5   test." *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004) (*quoting Phillips*, 307 F.3d at 1211-

6   12).   As a general rule, courts will not grant protective orders prohibiting the taking of deposition

7   testimony altogether.   *See EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006)

8   (citations omitted).   The Court finds that Defendant has not met its burden to show that a protective

9   order is warranted in this case.[12]

10        The requests for a temporal limitation on discovery, an order precluding further videotaped

11   depositions, and an order requiring the parties to justify any further depositions to the court before

12   they occur are all denied.  The nature of the allegations, potential damages, and defenses in this case

13   suggest that the temporal limitation proposed (limiting discovery to the period of June 8, 2008

14   through June 10, 2011, or, alternatively, from Plaintiff's date of hire (July 2006 through the present)

15   is inappropriate.  The videotaped depositions in this case have been invaluable in providing the Court

16   with a visual context of the parties' disputes.  Any concerns about the disclosure or use of discovery

17   materials is adequately covered in the parties' stipulated protective order (#55).[13]   The request that,

18   prior to conducting any future depositions in this case, the parties appear before the Court and justify

19   the need for the deposition is not necessary.   Here, it has been the manner of conducting depositions,

20   not the person being deposed which has been the primary concern.   The Federal Rules of Civil

21   Procedure provide ample guidance on the conduct and need for depositions and other discovery.

22

23        [12]  To support their request, Defendants focus extensively on the perceived shortcomings of two
     depositions which occurred prior to Adelson's deposition – the depositions of Mr. Zohar Lahav and Ms.
24   Betty Yurcich. The Lahav deposition occurred in the *Burlingame* case (see *supra* at n. 6). The undersigned
     is not the assigned magistrate judge on that case and will not speculate on the appropriateness of discovery
25   that occurred therein.  Counsel also points to questions he felt were inappropriate during the deposition of
     Ms. Betty Yurcich.  If counsel felt that the Yurcich deposition was being conducted in bad faith, the proper
26   course of conduct was to bring a motion pursuant to Rule 30(d)(3) or contact the Court during that
     deposition.  He did neither.

27        [13]  The Court disagrees with the assertion that the confidentiality agreement has been violated in this
     case.  At the time the videotape of Adelson's deposition was filed, the stipulated agreement had not been
28   approved.  *See* LR 7-1(b).

1    Finally, Defendant asks that a protective order be entered prohibiting the renewed deposition

2    of Adelson based on the theory that he is an "apex" witness.  Despite Adelson's deposition  being

3    calendared in late September and occurring in early October, this is the first time that the "apex"

4    objection was raised and, as the court has determined, the deposition was properly terminated.

5    At this point in the proceedings, the Court finds the timing of the objection questionable.

6    Nevertheless, even assuming timeliness, the Court finds  that the "apex" doctrine does not apply in

7    this case.  "A party seeking to prevent a deposition carries a heavy burden to show why discovery

8    should be denied."  *See Websidestory, Inc. v. Netratings, Inc.*, 2007 WL 1120567 (S.D. Cal. 2007).

9    When the party seeks the deposition of a high-level executive (also-called "apex" deposition), the

10   court may exercise its discretion under the federal rules to limit discovery.  *See* Fed. R. Civ. P. 26(c).

11   In determining whether to allow an apex deposition, courts consider (1) whether the deponent has

12   unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party

13   seeking the deposition has exhausted other less intrusive discovery methods.  *See e.g. Websidestory*,

14   2007 WL 1120567.  Additionally, "when a witness has personal knowledge of facts relevant to the

15   lawsuit, even a corporate president or CEO is subject to deposition."  *See e.g. Websidestory*, 2007

16   WL 1120567.  A claimed lack of knowledge, by itself, is insufficient to preclude a deposition.  *Id*.

17   The undersigned agrees with Judge Jones: it is likely that Defendants AdFam and Interface

18   are simply companies created to service the Adelson family and that Adelson "exercised significant

19   or even total control over Plaintiff's driving duties."  *See* Order (#37).  Based upon the allegations

20   in the complaint, Plaintiff worked exclusively for Adelson as his personal driver for several years.

21   Plaintiff's counsel represents that he received inadequate and incomplete responses to his request

22   for documentation regarding the time schedules and calendars reflecting Plaintiff's work schedule,

23   and other witnesses apparently do not have the personal knowledge necessary to address the

24   Plaintiff's work schedule. Additionally, "[t]he mere fact ... that other witnesses may be able to testify

25   as to what occurred at a particular time or place does not mean that a high-level corporate officer's

26   testimony would be repetitive.  Indeed, it is not uncommon for different witnesses to an event to

27   have differing recollections of what occurred." *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 2007

28   WL 4170548 (N.D.Cal. 2007).

1   There is no question Adelson is a busy, high-ranking executive.   However, that status, by

2   itself, is insufficient to preclude his deposition.  The Court is satisfied that Adelson has personal

3   knowledge of facts relevant to this lawsuit and his deposition may go forward.

4   **3.  Sanctions**

5   Pursuant to Fed. R. Civ. P. 30, "[a]t any time during a deposition the deponent or a party may

6   move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that

7   unreasonable annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A).

8   On motion, the court may order the deposition be terminated or its scope limited consistent with

9   Rule 26(c).  Fed. R. Civ. P. 30(d)(3)(B).  A terminated deposition may only be resumed by court

10   order.  *Id*.  Sanctions, including costs and attorneys fees, may be awarded for conduct that the court

11   finds "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

12   The court may order depositions to be resumed or taken again and that the cost be borne by the party

13   whose counsel's conduct necessitated retaking the deposition. *See e.g. Obrien v. Amtrak*, 163 F.R.D.

14   232, 236 (E.D. Pa. 1995); *see* Fed. R. Civ. P. 30(d)(3)(C) ("Rule 37(a)(5) applies to the award of

15   expenses.").

16   Having found that Adelson and his counsel improperly impeded and frustrated the fair

17   examination of Adelson during his October 6 deposition, the Court will grant Plaintiff's request for

18   sanctions.  The Court will require: (1) that Defendants pay <u>all</u> Plaintiff's costs and fees, including

19   attorneys fees, associated with the initial deposition; (2) that, unless the parties otherwise agree,

20   Adelson's deposition be taken again within 21 days of this order; and (3) that Defendants pay <u>all</u>

21   costs and fees, including attorney fees, associated with the new deposition.

22   Pursuant to Fed. R. Civ. P. 37(a)(5), if a court grants a motion to compel it must, after giving

23   an opportunity to be heard, require the non-moving party to "pay the movant's reasonable expenses

24   incurred in making the motion, including attorney's fees." *Id*.  If the motion is denied "the court

25   must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or

26   both to pay the party or deponent who opposed the motion its reasonable expenses incurred in

27   opposing the motion, including attorney's fees." *See* Fed. R. Civ. P. 37(a)(5)(B).  Rule 37(a)(5)

28   applies to motions brought under Rule 26(c).  *See* Fed. R. Civ. P. 26(c)(3).  Because the Court grants

Plaintiff's motion to compel (#33), Plaintiff is instructed to file an affidavit of costs and fees incurred in making the motion.  Because the Court denies Defendant's countermotion for protective order (#41),[14] Plaintiff's affidavit should also include the costs and fees incurred in opposing the motion. Plaintiff should make every effort to segregate the costs associated with bringing motion (#33) and opposing countermotion (#41).  Defendants will have an opportunity to respond to the affidavit.

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion to Compel and for Sanctions; for Protective Order; and for an Order Directing Counsel to Cease Obstructionist Tactics During Oral Depositions (#33) is **granted**.

**IT IS FURTHER ORDERED** that Defendant Interface Operations, LLC's Countermotion for Protective Order and for Sanctions  (#41) (also identified as docket #57) is denied.

IT IS FURTHER ORDERED that Defendants shall pay <u>all</u> Plaintiff's costs and fees, including attorneys fees, associated with the Defendant Sheldon G. Adelson's October 6 deposition. Plaintiff shall file an affidavit of costs and fees relating to the deposition within five days of this order.  The costs and fees incurred for filing motion (#33) and opposing motion (#41) should not be included in the affidavit of costs and fees related to the deposition.  Defendants shall have five days after filing of the affidavit and fees to respond.

**IT IS FURTHER ORDERED** that, unless the parties agree otherwise, the deposition of Defendant Sheldon G. Adelson shall be taken again within 21 days of this order.  The time limits set forth in Fed. R. Civ. P. 30(d)(1) shall be reset.  Defendants shall pay <u>all</u> costs and fees, including attorney fees, associated with this new deposition.  Plaintiff shall submit an affidavit detailing the costs and fees incurred in taking the new deposition within ten (10) days of completion of the deposition.

**IT IS FURTHER ORDERED** that Plaintiff shall have **twenty-one days (21)** from the date of this order to file an affidavit of costs and fees incurred in bringing emergency motion (#33) and opposing Defendant's countermotion for protective order (#41).  Plaintiff should segregate the costs

---

[14]  The countermotion was also designated by the Clerk's office as Docket entry #57.

1  associated with both motions and the deposition.  Defendants shall have **ten (10) days** to file any

2  opposition.

3          DATED this 5th day of December, 2011.

4

5          _____
           C.W. Hoffman, Jr.

6          United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28